UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DANIEL LARA,               ) | |
|                                         ) | |
|           Plaintiff,             ) | Case  No. EDCV 10-01570 AJW |
|                                         ) | |
|           v.                        ) | MEMORANDUM OF DECISION |
|                                         ) | |
| MICHAEL J. ASTRUE,   ) | |
| Commissioner of the Social ) | |
| Security Administration,   ) | |
|                                         ) | |
|           Defendant.          ) | |
|                                         ) | |

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed an application for SSI benefits on December 20, 2005, alleging that he had been disabled since December 31, 1997 due to depression, affective mood disorders, hepatitis C, numbness in his left arm, loss of the use of his right upper extremity, left knee problems and pain, pins in his jaw, jaw pain, asthma, and disorders of the muscles, ligaments, and fascia. [JS 2].[1]

---

[1] Plaintiff filed a prior application for SSI benefits that was finally denied by the Commissioner as to the period through November 9, 2005, and the Commissioner's denial of

1    Plaintiff's applications were denied initially and upon reconsideration. [JS 2; Administrative Record
2 ("AR") 77-81, 83-87]. Plaintiff requested an administrative hearing, which was conducted before
3 Administrative Law Judge Mason D. Harrell, Jr. (the "ALJ") on March 6, 2008. [AR 29-50; 379-400].
4 Plaintiff, who was represented by an attorney, testified on his own behalf. [AR 379-400]. Testimony also
5 was received from a vocational expert. [AR 398-400].

6    On April 4, 2008, the ALJ issued a written decision denying plaintiff's application for benefits. [AR
7 355-365]. The Appeals Council denied plaintiff's request for review on September 26, 2008. [AR 1-3, 366-
8 368]. Plaintiff filed an action for judicial review in this court, resulting in a stipulated remand for further
9 administrative proceedings on August 4, 2009. [AR 370-373].

10    On remand, the Appeals Council vacated and remanded the case to the ALJ, who held an additional
11 hearing on July 30, 2010. The ALJ then issued another unfavorable decision. [AR 300-310]. The ALJ
12 found that plaintiff had the following severe impairments: loss of the use of his right upper extremity,
13 obesity, and depression. [AR 305]. The ALJ determined, however, that plaintiff's impairments, singly or
14 in combination, did not meet or equal an impairment included in the Listing of Impairments (the "Listing").
15 [AR 305]. See 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ further found that plaintiff retained the
16 residual functional capacity ("RFC") to perform a range of light work, and therefore that plaintiff could not
17 perform his past relevant work as a welder, construction worker, or gardener. [AR 309]. Based on the
18 testimony of the vocational expert, the ALJ determined that plaintiff could perform alternative jobs that exist
19 in significant numbers in the national economy. [AR 309-310]. The ALJ therefore concluded that plaintiff
20 was not disabled at any time up to the date of his decision. The ALJ's decision on remand is the
21 Commissioner's final decision in this matter. [AR 309-310]. See 20 C.F.R. §§ 404.984, 416.1484
22 (explaining that when a case is remanded by a federal court for further consideration, the decision of the
23 ALJ will become the final decision of the Commissioner unless the Appeals Council assumes jurisdiction
24 based on the claimant's written exceptions or on its own authority).

---

26 benefits was affirmed on appeal. [JS 2; Administrative Record ("AR") 55-67; see Lara v. Astrue,
27 305 Fed.Appx. 324 (9th Cir. Nov. 19, 2008) ]. Therefore, plaintiff is precluded from relitigating the
   issue of his entitlement to social security disability benefits through November 9, 2005. See
28 generally Robi v. Five Platters, Inc., 838 F.2d 318, 321-322 (9th Cir. 1988) (discussing the elements
   of claim preclusion).

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Statement of Disputed Issues**

The disputed issues are: (1) whether the ALJ properly complied with the Appeals Council order and; (2) whether the Dictionary of Occupational Titles ("DOT") definitions are inconsistent with the ALJ's holding that plaintiff can perform the jobs of toll collector and charge account clerk.

**Discussion**

Plaintiff was involved in a motor vehicle accident in 1994 and sustained an open fracture to his right forearm. His right arm was nearly severed. His right forearm was reattached and required extensive repair of flexor and tendons, which also resulted in nerve damage. Over time, plaintiff's grasping and extending capabilities with his right arm improved somewhat, though never fully, and he has difficulty with pain. Plaintiff also complained of knee pain, and said that he underwent left knee surgery in high school to replace a torn ligament. Plaintiff added that he suffered from depression. Finally, plaintiff testified that he experiences fatigue, shortness of breath, and asthma. [AR 56, 315-340, 362-363].

In his first decision on April 4, 2008 [AR 355-365], the ALJ found that plaintiff had the RFC to perform a restricted range of light work. [AR 361]. The ALJ relied on testimony from a vocational expert (the "VE") to determine that there were jobs that exist in significant numbers in the national economy that plaintiff could perform, consistent with the DOT. [AR 365]. However, the ALJ failed to include certain

3

1  limitations that were present in his RFC finding in his hypothetical question to the VE. [AR 398-400; JS
2  4]. The Appeals Council remanded the case in order to clarify apparent conflicts between plaintiff's RFC
3  as found by the ALJ and the demands of the jobs cited by the VE as those jobs are classified in the DOT.
4  [AR 372-373; JS 4].

5  During the hearing on remand on July 30, 2010, the ALJ again sought testimony from the VE. The
6  hypothetical question presented to the VE incorporated all of the limitations ultimately included in the
7  ALJ's RFC finding. [AR 351-354]. The VE testified that jobs within the RFC of the hypothetical person
8  would include toll collector (DOT occupational code number 211.462-038) and charge account clerk (DOT
9  occupational code number 205.367-014). [AR 352]. The ALJ asked the VE whether his testimony was
10 consistent with the DOT, and the VE said that it was. [AR 353].

11 In his hearing decision on remand, the ALJ found that plaintiff had the RFC to perform light work
12 requiring not more than frequent use of his right arm, no more than occasional right hand fine motor
13 coordination, lifting or carrying no more than five pounds on the right, lifting or carrying up to twenty
14 pounds occasionally and ten pounds frequently, "but no lifting more than 5 pounds maximum on the right."
15 [AR 306]. The ALJ found that plaintiff could stand and/or walk two hours out of eight with the use of a
16 cane and had no restrictions on sitting. [AR 306]. Mentally, plaintiff was limited to simple repetitive tasks.
17 [AR 306]. The ALJ also found that plaintiff had the "no more than occasional and precluded limitations
18 set forth" in Exhibit 7F3, indicating that plaintiff was precluded from climbing ladders, ropes, and scaffolds,
19 but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. [AR 253, 306].

20 Plaintiff contends that the VE's testimony does not provide substantial evidence supporting the
21 ALJ's finding of nondisability because the jobs identified by the VE were inconsistent with plaintiff's RFC,
22 and the ALJ did not identify and resolve any conflicts between the occupational evidence provided by the
23 VE and the information in the DOT. [JS 7].

24 The Commissioner relies primarily on the DOT for "information about the requirements of work in
25 the national economy." Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007)(quoting Social Security
26 Ruling ("SSR") 00-4p, 200 WL 1898704, at *2)). There is a rebuttable presumption that the information in
27 the DOT and its supplementary Selected Characteristics is controlling. Villa v. Heckler, 797 F.2d 794, 798
28 (9th Cir. 1986); accord, Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).

The Commissioner "also uses testimony from vocational experts to obtain occupational evidence." Massachi, 486 F.3d at 1153. At step five of the sequential evaluation procedure, the Commissioner has the burden of establishing, through the testimony of a VE or by reference to the Medical-Vocational Guidelines, that the claimant can perform other jobs that exist in substantial numbers in the national economy. Bruton v. Massanari, 268 F.3d 824, 827 n.1 (9th Cir. 2001). "Where the testimony of a VE is used at Step Five, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." Osenbrock v. Apfel, 240 F.3d 1157, 1162-1163 (9th Cir. 2001).

An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether that testimony conflicts with the DOT. Massachi, 486 F.3d at 1152. A VE's "testimony may give rise to such a conflict in at least two different ways. First, the vocational expert may testify that a particular job requires a particular exertional or skill level, when the DOT expressly provides that the job requires a different exertional level." Carey v. Apfel, 230 F.3d 131, 144 n.2 (5th Cir. 2000). "A second, and different type of conflict may arise when the [VE's] testimony places the ALJ's finding with respect to the claimant's residual functional capacity or the claimant's specific impairments in conflict with the exertional or skill level or the specific skills required for the identified jobs in the DOT." Carey, 230 F.3d at 144 n.2.

Neither the DOT nor the vocational expert's testimony "automatically trumps when there is a conflict." Massachi, 486 F.3d at 1153 (footnote omitted). The ALJ must obtain an explanation from the vocational expert for any conflict and then must determine whether the explanation is reasonable, and whether a basis exists for relying on the expert rather than the DOT. Massachi, 486 F.3d at 1153; see Johnson, 60 F.3d at 1428 (stating that an ALJ may rely on expert testimony which contradicts the DOT "only insofar as the record contains persuasive evidence to support the deviation"). Examples of reasonable explanations for deviation are that the DOT "does not provide information about *all* occupations, information about a particular job not listed in the [DOT] may be available elsewhere, and the general descriptions in the [DOT] may not apply to specific situations." Massachi, 486 F.3d at 1153 n.17 (citing SSR 00-4p, at *2-*3); see Johnson, 60 F.3d at 1428 & n.7 (stating that "persuasive evidence" supporting deviation from the DOT includes expert testimony that a particular subcategory of job not described in the DOT exists in the local job market).

Plaintiff argues that the ALJ's determination that plaintiff can perform the DOT job of toll collector is inconsistent with plaintiff's RFC as found by the ALJ [JS 18]. The DOT classifies the job of toll collector job as light work.[2] DOT 211.462-038. The full range of light work requires the ability to stand or walk for six hours in an eight-hour day and the ability to lift and carry twenty pounds occasionally and ten pound frequently. The ALJ found that plaintiff can stand or walk only two hours out of eight with the use of a cane and can lift or carry no more than five pounds with his dominant right arm. [AR 306]. The VE said that her testimony was consistent with the DOT, but the discrepancy between plaintiff's RFC and the job description in the DOT creates an apparent unresolved conflict. See Carey, 230 F.3d at 144 n.2.

Defendant contends that "[a]pparently, the VE, applying his expertise, was aware that a Toll Collector may perform this job in a seated position for part or all of the workday." [JS 12]. Absent testimony by the VE as to that fact, however, defendant's argument is conjecture. Cf. Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (noting that when "the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the vocational expert's head, we are left with nothing to review.") (alteration omitted). The DOT suggests that the toll collector job would exceed plaintiff's RFC even if it could be performed with no more than two hours a day of standing or walking. The DOT explains that a job may be classified as light work without significant standing or walking "when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls" or "when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." DOT 211.462-038.

The DOT instructs that a toll collector "collects money," "gives customers change," "[a]ccepts toll

---

[2] "Light work" involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. The full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday. Sitting may occur intermittently during the remaining time. In addition, occasional bending from the waist is required to lift and carry objects. Unlike work at the medium level, frequent bending or stooping is not required for light work. Moreover, limitations in an individual's ability to climb, bend, kneel or crawl will not significantly erode the occupational base at either the light or medium level of exertion. See 20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *6-*7; SSR 83-10, 1983 WL 31251, at *5-*6; SSR 83-14, 1983 WL 31254, at *4-*5.

and fare tickets," and performs similar tasks. Nothing in that job description indicates that the job involves sitting most of the time and pushing arm or leg controls. However, that job description could fit the rubric of "working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." DOT 211.462-038. Plaintiff's RFC, however, specifies that he is limited to occasional fine motor coordination with his dominant right hand and no more than frequent use of his right arm. Thus, plaintiff would have to rely on his non-dominant left hand to "constantly" handle materials "at a production rate pace." Thus, even assuming that the VE had this description of light work in mind when he testified that the hypothetical person could perform the DOT job of toll collector, his testimony does not explain how a person with plaintiff's limitations in his dominant arm and hand could perform that job.

Defendant also argues that an individual does not need to be able to perform a full range of light work in order to be able to perform a particular light job. [JS 12]. While it is true that the DOT creates only a rebuttable presumption as to job classifications, Tommasetti, 533 F.3d at 1042, the ALJ has the burden of rebutting the presumption by explaining any conflicts between the DOT and a VE's testimony. Massachi, 486 F.3d at 1153. Although the VE denied that a conflict existed, his testimony created an apparent, unresolved conflict with the DOT. The VE's testimony was not substantial evidence supporting the finding that plaintiff could perform the DOT job of toll collector.

The second job identified by the VE, charge account clerk, is classified in the DOT as sedentary work. [AR 352]. Plaintiff argues that there is a conflict between the VE's testimony and the DOT because plaintiff's RFC would not permit him to lift up to ten pounds occasionally. [JS 19]. "The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools." SSR 96-9p, 1996 WL 374185, at *3. The ALJ limited plaintiff to lifting and carrying five pounds with his right hand, but also found that plaintiff can occasionally lift up to twenty pounds with his left hand. Since the DOT classifies the job of charge account clerk as sedentary, the job requires only the ability to occasionally to lift objects weighing up to ten pounds. See DOT 205.367-014. There is no material conflict between plaintiff's RFC and the DOT.

**Mental limitations**

Plaintiff contends that the DOT jobs of toll collector and charge account clerk exceed his RFC

7

because they involve more than simple, repetitive tasks, and therefore that the ALJ erred in relying on the VE's testimony to find that those jobs were within plaintiff's RFC.

DOT job classifications include a "General Educational Development" ("GED") component comprising three scales: Reasoning Development, Math Development, and Language Development. The GED reasoning, math, and language development scales range from level 1 (low) to level 6 (high). Level 1 reasoning requires no more than the ability to "apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." See DOT, Appendix C, Components of the Definition Trailer (4th ed. rev.1991) ("DOT, App. C."). Level 2 reasoning is defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT, App. C. Level 3 reasoning is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, App. C.

A limitation to simple, repetitive tasks is consistent with jobs that require level 1 or level 2 reasoning. See Meissl v. Barnhart, 403 F.Supp.2d 981, 982-984 (C.D. Cal. 2005) (holding that a claimant who was limited to "simple tasks performed at a routine or repetitive pace" was not precluded from performing an unskilled past job with level 2 reasoning development) (citing Flaherty v. Halter, 182 F.Supp.2d 824, 850 (D. Minn. 2001)); accord, Chavez v. Astrue, 699 F.Supp.2d 1125, 1136 n.10 (C.D. Cal. 2009) (holding that level 1 or level 2 reasoning jobs are consistent with a limitation to simple, repetitive tasks). However, the DOT jobs of toll collector job and the charge account clerk require level 3 reasoning. See DOT 211.462-038 and 205.367-014. Level 3 reasoning, which requires dealing with problems involving "several concrete variables," is not consistent with a limitation to simple, repetitive tasks. See Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that a limitation to "simple and routine work" was more consistent with level 2 reasoning than with level 3 reasoning); Duran v. Astrue, 654 F.Supp.2d 1298, 1303-1304 (D. Colo. 2009) (holding that the ALJ erred in finding that a claimant who was limited to jobs involving "simple instructions" could perform level 3 reasoning jobs); Estrada v. Barnhart, 417 F.Supp.2d 1299, 1303-1304 (M.D. Fla. 2006) (holding that the ALJ erred in relying on a VE's

testimony that a claimant who was limited to "simple interactions and tasks" could perform level 3 reasoning jobs without first questioning the VE about the inconsistency between that testimony and the DOT).

The ALJ's reliance on the VE's testimony without acknowledging and obtaining an explanation for the apparent conflict between that testimony and job information in the DOT was reversible error, and the VE's testimony does not constitute substantial evidence supporting ALJ's finding that plaintiff can perform alternate jobs that exist in significant numbers in the national economy.

**Conclusion**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

In this case, a remand for an award of benefits is the appropriate remedy. This case has already been remanded once for errors at step five. On remand, the Commissioner again failed to meet his burden to identify alternate jobs within plaintiff's RFC that exist in significant numbers in the national economy.

**Conclusion**

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and is not free of legal error. Accordingly, the Commissioner's decision is reversed, and the case is remanded for an award of benefits consistent with this memorandum of decision.

**IT IS SO ORDERED.**

October 4, 2011

_____
ANDREW J. WISTRICH
United States Magistrate Judge